IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RUBEN BORDEN-VASALLO (ID 108165),** | |
| **Plaintiff,** | |
| v. | Case No. 2:20-cv-02104-HLT-TJJ |
| **MIAMI COUNTY SHERIFF'S OFFICE, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Ruben Borden-Vasallo[1] has sued various Miami County, Kansas officials and subordinate agencies because of an incident that occurred while sheriff's deputies were transporting him in a prisoner transport van. Defendants move for summary judgment on some claims and seek dismissal of other claims and parties. Doc. 15.

The Court finds that the only proper defendants in this case are the two individual deputies because Plaintiff is either not asserting claims against the other parties, or they are not entities capable of being sued. The two individual deputies being sued are entitled to qualified immunity on Plaintiff's Eighth Amendment claim because Plaintiff has not shown the violation of a clearly established constitutional right. Plaintiff's purported claims under the Fourth, Fifth, Ninth, and Fourteenth Amendments are not valid and are dismissed. The only remaining claim is Plaintiff's state-law negligence claim, which this Court declines to exercise supplemental jurisdiction over and remands to state court.

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

**I.      BACKGROUND**[2]

Plaintiff is an inmate at Oswego Correctional Facility in El Dorado, Kansas. Doc. 16 at 2. The Miami County Sheriff's Department is a subdivision of Miami County. *Id.* The Kansas County Association Multiline Pool ("KCAMP") is a "group self-insured property/casualty plan formed under K.S.A. 12-2616, *et. seq.*" *Id.* at 3. Deputy Ken Richardson and Deputy Andrea Zaman are Miami County Sheriff's Department deputies. *Id.*

On July 24, 2018, Zaman and Richardson were transporting Plaintiff from the Miami County jail to the Oswego Correctional Facility in a prisoner transport van. *Id.* The drive takes approximately two hours. *Id.* at 4. During the trip, Plaintiff's hands and feet were handcuffed, though the exact way in which his hands were shackled is somewhat disputed. *Id.*; *see also* Doc. 27 at 1; Doc. 43 at 3. Neither Zaman nor Richardson entered the back of the van when Plaintiff was inside for safety reasons. Doc. 16 at 4. There is a dispute about whether Plaintiff asked to have his seatbelt fastened, at least at some point in the trip, and whether Plaintiff's hands and the position of the seatbelts allowed him to fasten his own seatbelt. But it is undisputed that Plaintiff was unbuckled for the duration of the trip.

Richardson drove the van. *Id.* At some point during the trip, a car turned in front of the van, and Richardson had to brake quickly to avoid hitting the car. *Id.* This caused Plaintiff to slide from his seat and hit one of the van's walls. *Id.* Plaintiff says that his head "slammed" into the van wall. Doc. 28 at 1. The Court has reviewed video from inside the van. It shows Plaintiff, who was sitting by the back door, lean toward the front of the compartment before falling or sliding headfirst

---

[2] Plaintiff generally responds to Defendants' statement of facts with argument and does not direct the Court to any evidence directly contradicting any facts. This fails to comply with Rule 56(c) and D. Kan. Rule 56.1. Nonetheless, mindful of Plaintiff's pro se status, the Court has reviewed Plaintiff's filings and notes any areas of apparent factual dispute that are material to the issues in this case.

toward the front wall of the passenger compartment. The velocity of any impact is difficult to gauge from the video.[3]

Zaman heard Plaintiff slide into the van wall and called back to him "to hold on and that they were stopping." Doc. 16 at 4. Just down the road from where the incident occurred, Richardson pulled into a parking lot so he and Zaman could check on Plaintiff. *Id.* at 5. When they opened the van door, Plaintiff had his pant legs rolled up, revealing rug burns or scrapes on his knees. *Id.* But there was no blood on Plaintiff or on the walls or floor of the van. *Id.* Richardson asked Plaintiff if he hit his head, and when Plaintiff said he had, Richardson examined Plaintiff's head but found no outward signs of a head injury. *Id.* Both Zaman and Richardson had first-aid training, which included the signs and symptoms of head trauma and how to handle serious medical injuries. *Id.* at 3. Both concluded that Plaintiff did not need immediate medical care. *Id.* at 5-6. Both also knew that the Oswego Correctional Facility had medical staff that could examine Plaintiff when they arrived. *Id.* at 6.

Zaman told Plaintiff to put on his seatbelt before they continued the trip, but neither Zaman nor Richardson climbed in the van to help Plaintiff buckle himself in because of safety concerns

---

[3] Two video clips from inside the van were cited in support of Defendants' motion. Doc. 16 at 4; *see also* Doc. 16-4 (affidavit submitted with videos). Defendants sought and were granted leave to file the cited video clips conventionally. Doc. 4; Doc. 12. Plaintiff contends in his surreply (discussed further below) that the Defendants "redacted" the video to make the chain from his waist to his handcuffs look longer than five inches, "slow motioned the video and took different views that wouldn't show what actually happened," and "deliberately selected 'Not' to show the plaintiff's head, neck, and back being slammed into the front van wall." Doc. 44 at 2. The Court has reviewed the videos submitted by Defendants. As noted above, the first clip does show Plaintiff sliding towards the front of the van, before righting himself and getting back into his seat. But neither clip shows the period where Defendants stopped the van and examined Plaintiff, nor is there any sound (beyond static). Accordingly, the videos are not overly helpful in resolving the legal issues here, primarily whether Zaman or Richardson were deliberately indifferent to Plaintiff's injuries or safety. The Court further notes that, at one point, Plaintiff submitted his own copy of the video to the Court, though without seeking leave to file it conventionally. *See* Doc. 21. That video was directed to the District Judge previously assigned to this case, which has since been reassigned to the undersigned. Doc. 26. Plaintiff later requested his copy of the video be returned, which it was. *See* Docs. 36, 40, and 41. It is unclear whether Plaintiff contends that his copy of the video shows something different than the version submitted by Defendants. Regardless, Plaintiff has not filed any different version of the video in response to Defendants' summary-judgment motion.

3

related to being in the small confines of the van with a prisoner. *Id.* at 4, 6. Zaman and Richardson continued to monitor Plaintiff through the van's video feed for the remainder of the trip. *Id.* at 6. Defendants claim that Plaintiff remained seated the rest of the trip and just looked out of the window and did not do or say anything that made them think he needed immediate medical attention. *Id.* Plaintiff claims he "moaned and groaned continuously" during the remainder of the drive. Doc. 28 at 2. The video of this portion of the trip, which does not include the entire duration of the trip, is generally inconclusive on this point because there is no sound.[4]

At the Oswego Correctional Facility, Plaintiff did not exhibit any need for immediate medical attention. Doc. 16 at 6. But Zaman and Richardson notified correctional officers about the incident in the van, who said that Plaintiff would be examined by medical staff. *Id.*

Plaintiff later sent a document titled "Written Notice of Claim Under the Kansas Tort Claims Act Pursuant to K.S.A. § 12-105b(d)" to the Miami County Court Clerk, which was filed as a state-court petition. *See* Doc. 1-2 (all caps omitted). The state-court filing only lists the Miami County Sheriff's Department, the Miami County Courthouse, and the "Kansas Association Multi Line Pool" as defendants in the case caption. Doc. 1-2 at 1. The body of the petition also includes allegations against Zaman and Richardson. At some point, Judge Steven Montgomery, who is only mentioned as the judge who ordered the transportation, was included as a defendant on the docket as well. Although the state-court filing does not explicitly identify any legal claims, it does allege negligence and deliberate indifference. *Id.* at 2-3. Defendants sent interrogatories to Plaintiff asking whether he was claiming that any constitutional rights were violated. Plaintiff answered that his rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments were implicated

---

[4]   The video provided to the Court only reflects snippets of time and seems to "freeze" for large sections of time.

by the van incident. Doc. 1-1 at 3-4. Based on that, Defendants removed the case to federal court. Doc. 1.

## II. STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ANALYSIS

### A. Judge Steven Montgomery must be dismissed because Plaintiff has stated he is not asserting any claim against him, and Judge Montgomery is entitled to absolute immunity.

Defendants argue that Judge Steven Montgomery is entitled to absolute immunity and should be dismissed. Doc. 16 at 8. "Except where a judge has acted 'in the clear absence of all jurisdiction,' the doctrine of judicial immunity shields that judge from liability for the judge's official adjudicative acts." *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002); *see also Dunn v. Harper Cty.*, 520 F. App'x 723, 725 (10th Cir. 2013) ("We agree with the district court that the judge, court clerks, and prosecutor are all entitled to absolute immunity under well-established precedent from the Supreme Court and this court."). Plaintiff has clarified in his response that he

5

is not suing Judge Montgomery, and he was only listed in the petition because he was the judge who ordered the transportation. Doc. 27 at 4. Accordingly, Judge Montgomery is dismissed from this case.

      **B.**      **The Miami County Courthouse and Miami County Sheriff's Department lack the capacity to be sued.**

Defendants argue that neither the Miami County Courthouse nor the Miami County Sheriff's Department are proper parties because they are entities that lack the capacity to be sued under Kansas law. Doc. 16 at 20-21. Specifically, Defendants argue that Kansas has not authorized suits against sheriff's departments, and the courthouse is a building, not an entity that can be sued. *Id.*

"Subordinate governmental agencies do not have the capacity to sue or be sued in the absence of a specific statute." *Wright v. Wyandotte Cty. Sheriff's Dep't*, 963 F. Supp. 1029, 1034 (D. Kan. 1997). It is undisputed that both the sheriff's department and the courthouse are subdivisions of Miami County. Doc. 16 at 2. Plaintiff has not directed the Court to any statute specifically authorizing either the Miami County Courthouse or the Miami County Sheriff's Department to sue or be sued. Accordingly, neither are proper parties.

Plaintiff has clarified that he is not actually suing the Miami County Courthouse. Doc. 27 at 7. As for the Miami County Sheriff's Department, Plaintiff states that both Zaman and Richardson worked for that entity. *Id.* But Plaintiff points to no authority that permits him to sue the <u>department</u>, which is a subordinate agency of Miami County. Further, an entity is not liable under 42 U.S.C. § 1983 simply because its employees took certain actions. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Accordingly, the Court must dismiss claims against the Miami County Sheriff's Department and the Miami County Courthouse.

### C.     Plaintiff does not allege any claims against KCAMP.

Plaintiff has also named the "Kansas Association Multi Line Pool," also known as KCAMP. KCAMP is a "group self-insured property/casualty plan form under K.S.A. 12-2616." Doc. 16 at 3. Defendants argue that KCAMP is not a proper party because no claim can lie against the insurer until the underlying liability of a tortfeasor is established, and because Plaintiff has not demonstrated that KCAMP took any action toward Plaintiff under color of state law sufficient to state a 42 U.S.C. § 1983 claim. Doc. 16 at 21-22; *see also Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1258 (D. Kan. 2001) ("In order to set forth a claim for relief under 42 U.S.C. § 1983, plaintiff must assert that defendants acted under color of state law to deprive her of a federal right."). Plaintiff states that he only named KCAMP so that the Court could subpoena information about the claim coverage of the van incident "so that the Honorable Judge could use the information in order to make a reasonable monetary settlement for damages." Doc. 27 at 8. Based on this, it does not appear that Plaintiff is asserting any claim for liability against KCAMP. Nor has Plaintiff pointed to any facts at all involving KCAMP in the van incident. Thus, there is no genuine issue of KCAMP's liability to Plaintiff. The Court therefore concludes KCAMP should be dismissed.

### D.     Plaintiff's has not asserted any valid cause of action under the Fourth, Fifth, Ninth, or Fourteenth Amendments.

Defendants also move to dismiss any purported claim by Plaintiff under the Fourth, Fifth, Ninth, and Fourteenth Amendments. Regarding the Fourth Amendment, Plaintiff argues it gives him the right to be "secure" in his person during transport, apparently meaning a right to be buckled in. But the Fourth Amendment protects against government invasions into constitutionally protected areas. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). It does not create a right

7

to the use of seatbelts, even by use of the word "secure." Accordingly, Plaintiff fails to demonstrate that the Fourth Amendment applies here.

Plaintiff claims that his Fifth Amendment's rights were violated because he was put in jeopardy of life and limb as he could have been killed during the van incident. But this does not state a valid claim under the Fifth Amendment, which addresses deprivation of life, liberty, or property "without due process of law." U.S. Const. Amend. V; *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("Although Oxendine references the Due Process Clauses of the Fifth and Fourteen[th] Amendments and argues that he was denied his 'due process rights to adequate medical treatment,' his complaint is more accurately characterized as an Eighth Amendment claim that Defendants' provision of inadequate medical treatment . . . caused Oxendine substantial harm.").

Plaintiff claims his Ninth Amendment rights were violated when Defendants "violated the enumeration in the constitution of the plaintiff's certain rights which shall not be construed to deny him or disparage him while being retained in the custody of the Miami County Sheriff[']s Department during transportation." Doc. 1-1 at 4 (all caps omitted). Plaintiff's argument on this point is not entirely clear. But the Court is not aware of any way in which—and Plaintiff has not sufficiently demonstrated how—the Ninth Amendment is implicated here.

Finally, Plaintiff's claim under the Fourteenth Amendment is also inappropriate. The Fourteenth Amendment entitles pretrial detainees to the same standard of medical care that prisoners are entitled to under the Eighth Amendment. *See McCowan v. Morales*, 945 F.3d 1276, 1290 (10th Cir. 2019); *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). Here, it is undisputed that Plaintiff was an inmate in the custody of the Miami County Sheriff's

Department when the incident occurred. Doc. 16 at 3. Thus, the Eighth Amendment controls his claim, not the Fourteenth Amendment.

   **E.**  **Zaman and Richardson are entitled to qualified immunity on Plaintiff's Eighth Amendment claim because they did not violate a clearly established constitutional right.**

The remaining Defendants in this case are Zaman and Richardson, the two deputies responsible for transporting Plaintiff in the van. His remaining constitutional claim is based on the Eighth Amendment. Defendants argue there was no Eighth Amendment violation, and even if there was, Zaman and Richardson are entitled to qualified immunity.

Qualified immunity is meant to protect public servants—"all but the plainly incompetent or those who knowingly violate the law"—from the burdens of lawsuits. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once a defendant asserts qualified immunity, the plaintiff must show that: (1) the defendant's actions violate a constitutional right and (2) the constitutional issue was clearly established at the time of the defendant's actions. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.* (quoting *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017)). Courts are given leeway in deciding which of these elements to address first. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). Because Defendants argue primarily that there was no Eighth Amendment violation, the Court will begin with that question.

   **1.**  **Zaman and Richardson were not deliberately indifferent to Plaintiff's safety or medical needs.**

Deliberate indifference to an inmate's safety or serious medical need violates the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Dexter v. Ford Motor Co.*, 92 F. App'x 637, 640 (10th Cir. 2004). But not "every claim by a prisoner that he has not received

9

adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Likewise, "an inadvertent failure to provide adequate medical care" or mere negligence is not sufficient to state a violation of the Eighth Amendment. *Id.* at 105-06. Rather, the test for whether an official has been deliberately indifferent involves both an objective and subjective analysis. *Mata*, 427 F.3d at 751.

For the objective component, the Court evaluates whether the medical need is sufficiently serious, meaning it has been diagnosed by a doctor as mandating treatment, or it is so obvious that even a lay person would recognize the need for medical attention. *Id.* A delay in medical care is actionable under the Eighth Amendment if the delay resulted in substantial harm, meaning lifelong disability, permanent loss, or considerable pain. *Id.*; *Oxendine*, 241 F.3d at 1278; *see also Rivera v. Leaming*, 2000 WL 382035, at *6 (D. Kan. 2000) ("To prove that jail officials were 'deliberately indifferent' to such serious medical needs, plaintiff must show that the officials intentionally denied, delayed access to, or interfered with medical treatment." (citing *Estelle*, 429 U.S. at 104-06)).[5] For a claim based on an alleged disregard of an inmate's safety, the objective test asks whether the conditions at issue pose a substantial risk of serious harm or excessive risk to inmate safety. *Dexter*, 92 F. App'x at 640.

The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A

---

[5] Whether a delay in care resulted in substantial harm is analyzed under the objective component of the test. *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014).

prison official's knowledge can be based on circumstantial evidence, including that the official knew about the substantial risk simply because the risk was obvious. *Mata*, 427 F.3d at 752.

Although not exceedingly clear, Plaintiff seems to assert two theories of deliberate indifference by Zaman and Richardson: first, to his safety by not buckling his seatbelt, and second, by disregarding his medical needs by not providing him with immediate medical care. Each must satisfy both the objective component and subjective component to state an Eighth Amendment deliberate-indifference claim.

The Tenth Circuit has held that failure to buckle the seatbelt of an inmate does not pose a substantial risk of serious harm sufficient to meet the objective component of an Eighth Amendment deliberate-indifference claim. *Dexter*, 92 F. App'x at 641; *Brown v. Larsen*, 653 F. App'x 577, 579 (10th Cir. 2016); *see also Jabbar v. Fischer*, 683 F.3d 54, 57-58 (2d Cir. 2012) (holding "that the failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments" and noting that other circuits and numerous district courts have likewise rejected similar arguments); *Rodriguez v. City of Liberal*, 2013 WL 443414, at *2 (D. Kan. 2013) (citing cases "squarely reject[ing] the claim that a failure to provide a prisoner with a seatbelt violates the Eighth or Fourteenth Amendments"). This is because the risk of an accident is unrelated to use of a seatbelt, and "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension." *Dexter*, 92 F. App'x at 641. The Court notes that, in this case, there are no allegations or facts suggesting that Zaman and Richardson <u>drove</u> in a way that would have unreasonably or intentionally exposed Plaintiff to risk of harm. *See Brown*, 653 F. App'x at 579 (suggesting that a failure to buckle in a prisoner, coupled with reckless driving, may rise to the level of a substantial risk of serious injury). Accordingly, the fact that Zaman and

Richardson did not fasten Plaintiff's seatbelt, either before or after the incident, does not establish an Eighth Amendment deliberate-indifference claim.

Regarding his medical care, the Court notes that Plaintiff acknowledges that he did receive treatment for his injuries. It is undisputed that Zaman and Richardson immediately stopped to check on Plaintiff after the incident, but when they discerned no immediate need for medical attention, they continued transporting him to the correctional facility in El Dorado. There, Plaintiff concedes that he "did receive immediate medical attention at the El Dorado Correctional Facility, where he was given X-Rays, and other tests, where it was determined that he was suffering from internal injuries of his head, neck and back." Doc. 27 at 4; *see also* Doc. 1-2 at 3. Plaintiff does not challenge the nature or quality of the care he received at the correctional facility—only that Zaman and Richardson did not immediately call an ambulance. *See* Doc. 27 at 2-5. Accordingly, it is the delay in care (the approximately two hours it took for the van to arrive at the prison) that is at issue.[6] To meet the objective element of an Eighth Amendment deliberate indifference claim based on that, the delay in care must have resulted in substantial harm to Plaintiff. *See Oxendine*, 241 F.3d at 1276-77; *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). A delay results in substantial harm—and thus meets the objective component—where it causes lifelong disability, permanent loss, or considerable pain. *Mata*, 427 F.3d at 751. But "not every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock*, 218 F.3d at 1210; *see also Al-Turki*, 762 F.3d at 1193 (stating that the objective component is satisfied where the pain experienced during the delay is substantial).

---

[6] The fact that the incident occurred in and of itself does not rise to the level of a constitutional violation absent a showing of deliberate indifference. *See Dexter*, 92 F. App'x at 641 n.5 ("Although a § 1983 claim has been described as a species of tort liability, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." (quoting *Norton v. Liddel*, 620 F.2d 1375, 1378 (10th Cir.1980))).

Here, Plaintiff has not presented any evidence suggesting that the <u>delay</u> in treatment of a few hours (as opposed to the incident itself) exacerbated Plaintiff's injuries or caused substantially harmful lifelong disability or permanent loss that could have otherwise been avoided. Plaintiff does, however, claim that he was in pain for the remainder of the trip, stating that he "was suffering severe pain, and was moaning and groaning all the way to the Correctional Facility," and that this was an "intermediate injury, such as the pain the prisoner experienced while waiting for treatment and analgesics." Doc. 27 at 3, 5.[7] And delay in care that results in considerable pain can meet the objective component of the deliberate-indifference test. *Al-Turki*, 762 F.3d at 1193. Based on that, and mindful of Plaintiff's pro se status, the Court will accept for purposes of argument that he has satisfied the objective component of the deliberate-indifference claim resulting from a delay of care.[8]

As to the subjective element, however, the Court finds that there is no genuine issue of fact suggesting that either Zaman or Richardson knew of and disregarded an excessive risk to Plaintiff, considering the harm claimed. Defendants contend that Plaintiff sat quietly and looked out the window for the remainder of the trip, while Plaintiff claims he "moaned and groaned

---

[7] Defendants dispute that Plaintiff exhibited any behavior indicating he was in pain. Doc. 16 at 11-12. But whether Plaintiff displayed symptoms of considerable pain is not the relevant inquiry in the objective analysis. Rather, it is the "<u>harm claimed</u> by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the <u>symptoms presented</u> at the time the prison employee has contact with the prisoner.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753) (emphasis added)). And considerable pain resulting from delay of care can meet the objective component of the deliberate-indifference test. *Al-Turki*, 762 F.3d at 1193. Whether Defendants were aware of and disregarded Plaintiff's alleged pain is the focus of the subjective component of the test, as discussed below.

[8] The Court notes that Plaintiff has included with his response various materials suggesting that he has received medical care for injuries that he apparently sustained in the van incident. Although Plaintiff sought to subpoena various medical records, apparently to support his damage claim, the Magistrate Judge concluded that discovery would not be relevant to the question of qualified immunity, especially because Defendants were not disputing that the deputies did not fasten Plaintiff's seatbelt, which seemed to be the focus of Plaintiff's claim at the time. Doc. 33 at 3-4. From that order to now, it appears the parties have perhaps shifted in their theory of the case to include a deliberate-indifference claim based on medical care. Although the Court has some doubts that Plaintiff has sufficiently created a factual issue that the delay in care objectively resulted in substantial harm, the Court notes that the medical records may have informed on this issue. Accordingly, the Court will assume for purposes of this order that, based on the current record, Plaintiff can satisfy the objective component.

continuously." Doc. 28 at 2. But even accepting Plaintiff's contention that he moaned and groaned, this does not create a genuine issue of fact as to whether Zaman and Richardson <u>knew</u> of and <u>disregarded</u> Plaintiff's pain. First, there are no facts suggesting that Zaman or Richardson heard Plaintiff moaning and groaning and thus should have known he was in pain. Although Zaman and Richardson observed Plaintiff through the van's camera for the remainder of the trip, Doc. 16 at 6, the Court notes that the video does not contain sound (other than static) or otherwise reflect that Plaintiff was "moaning and groaning."

Second, there are no facts suggesting that Zaman or Richardson were indifferent to Plaintiff based on the symptoms he displayed. "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference." *Martinez*, 563 F.3d at 1089. Here, it is undisputed that the deputies pulled over to check on Plaintiff shortly after the incident. Doc. 16 at 4-5. Although Plaintiff had scrapes or rug burns on his knees, there was no blood anywhere in the van. *Id.* at 5. Although Plaintiff told Richardson he hit his head, there were no outward signs of a head injury. And based on their first aid training, neither deputy thought Plaintiff was in <u>immediate</u> need of medical care, especially since he would be checked out upon arrival at the prison within a couple hours. *Id.* at 5-6. Plaintiff acknowledges that he had no outward signs of a head, neck, or back injury, and concedes that both Zaman and Richardson "were oblivious" to the fact or did not know that he had suffered internal injuries. Doc. 27 at 2-3; *see also* Doc. 28 at 2. Further, once they arrived at the prison, Zaman and Richardson notified correction officials of the incident, and were told that Plaintiff would be examined by medical staff. *See* Doc. 16 at 6. Based on this, the Court concludes there is no genuine issue of fact suggesting that Zaman or Richardson either <u>knew of</u> and <u>disregarded</u> an excessive risk to

14

Plaintiff's health or safety given the symptoms displayed. Absent this, there was no Eighth Amendment violation.

### 2. Even if Plaintiff could establish a constitutional violation, he has not demonstrated it was clearly established.

The Court must grant Zaman and Richardson qualified immunity because Plaintiff has not demonstrated that either Zaman or Richardson violated a constitutional right. *See Knopf*, 884 F.3d at 944. But even if the Court was incorrect in that analysis, qualified immunity would still be appropriate here because Plaintiff has not demonstrated that any alleged constitutional violation in this case was clearly established.

To be clearly established, the contours of the right must be sufficiently clear so that the official would know that what he was doing violated the right. *Id.* It is not enough to point to the existence of a right at a high level of generality; rather, the question is whether the specific conduct of the defendant is clearly prohibited. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Cole v. Buchanan Cty. Sch. Bd.*, 328 F. App'x 204, 208 (4th Cir. 2009) ("The right that an official is alleged to have violated must be 'clearly established' not merely as a general proposition (in the way, say, the right to due process is clearly established) . . . ." (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). There need not be a case directly on point, but judicial precedent must have "placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Plaintiff has not come forward with any specific authority demonstrating that declining to call an ambulance following a hard-braking incident, where he displayed no outward signs of any serious medical condition, in favor of continuing the trip to a facility where medical care could be—and was—administered within a few hours, violates the Eighth Amendment. *Compare Rife v. Jefferson*, 742 F. App'x 377, 386 (10th Cir. 2018) ("And in this circuit, it has been clearly established for more than a decade that when an arrestee <u>not only informs an arresting officer of</u>

15

the internal symptoms of a serious medical condition but also displays outward signs of the need for medical attention, the arresting officer violates the Fourteenth Amendment by failing to seek such care." (emphasis added)). Accordingly, even if he could establish a constitutional violation under these facts, Plaintiff has not demonstrated that Zaman's or Richardson's conduct went against clearly established law. They are therefore entitled to qualified immunity.[9]

> **F.     The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law negligence claim and remands this case back to state court.**

Plaintiff's remaining claim for negligence arises under state law. A court has discretion to exercise supplemental jurisdiction over state-law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding whether to exercise supplemental jurisdiction over state-law claims, a court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *See, e.g.*, *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138-39 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist. 260*, 2011 WL 5149257, at *3 (D. Kan. 2011).

Defendants argue the Court should decline to exercise supplemental jurisdiction over Plaintiff's negligence claim if all federal constitutional claims are dismissed. Doc. 16 at 17-18. The Court agrees. The proceedings are at an early stage and the remaining claim is purely a state-

---

[9] The Court has concluded that Zaman and Richardson were not deliberately indifferent to Plaintiff's safety by failing to fasten his seatbelt because that action cannot satisfy the objective component of an Eighth Amendment claim, as held by the Tenth Circuit. *See Dexter*, 92 F. App'x at 641; *Brown*, 653 F. App'x at 579. This caselaw would obviously also cut across any claim that Zaman and Richardson violated a clearly established constitutional right by failing to fasten the seatbelt, and they would likewise be entitled to qualified immunity on the second prong of that analysis.

16

law claim. Considering the various factors, therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's negligence claim.[10] Accordingly, this case—in the form a single state-law negligence claim—is remanded back to Miami County District Court.

### G. Defendants' motion to strike Plaintiff's untimely fifth response is granted.

Finally, Defendants have filed a motion to strike Plaintiff's surreply. Doc. 45. This motion refers to a document titled "Plaintiff's Brief in Opposition to Defendant's Summary Judgment Memorandum." Doc. 44 (all caps omitted). This document was filed two weeks after Defendants' reply. It was also the fifth document Plaintiff purported to file in response to Defendants' motion for summary judgment.[11] The Court notes that Plaintiff disputes this document is a surreply. *See* Doc. 46. But for all practical purposes, it is a surreply, regardless of how it is titled. It was filed after Defendants' reply and specifically addresses statements made in the reply.

District of Kansas Local Rule 6.1(d)(2) provides that responses to motions for summary judgment must be "filed and served with 21 days." Replies are due 14 days after the response. The local rules only contemplate a response by the opposing party and a reply by the moving party. Surreplies—briefs filed in response to a reply—are generally not permitted, except where new information is raised in the reply brief and the surreply is needed to respond to it. *See Skerce v. Torgeson Elec. Co.*, 2019 WL 8017822, at *1 (D. Kan. 2019).

---

[10] Because the Court remands Plaintiff's state-law claim, it will not address the argument that Plaintiff failed to comply with Kansas's notice-of-claim statute. *See* Doc. 16 at 18-20; *see also* K.S.A. § 12-105b.

[11] Within 21 days of Defendants' motion, Plaintiff filed four documents: "Affidavit of Affiant Opposing Defendants Summary Judgment," (Doc. 27); a document substantively identical to Doc. 27, but titled "Affidavit of Affiant Opposing Defendants Summary Judgment & Statement of the Disputed Facts Affiant Believes Should Prevent this Court from Granting Summary Judgment" (Doc. 29); "Plaintiff Opposes Affidavit of Ken Richardson & Plaintiff's Statement of the Disputed Facts that He Believes Should Prevent this Court from Granting Summary Judgment" (Doc. 28); and "Plaintiff Opposes Affidavit of Andrea Zaman and States the Disputed Facts Plaintiff Believes Should Prevent this Court from Granting Summary Judgment" (Doc. 30). These documents purport to dispute facts set forth by Defendants. But they also make legal arguments and cite case law. *See, e.g.*, Doc. 27 at 5-6. Mindful of Plaintiff's pro se status, the Court, as did Defendants, has considered these documents collectively as Plaintiff's response.

Accordingly, surreplies are not permitted without leave of the Court. *See Patterson v. Lansing*, 2001 WL 946181, at *2 (D. Kan. 2001). Plaintiff did not seek leave. Further, Plaintiff has not presented any reason why a surreply would be warranted in this case. *See id.* It does not appear that Defendants raised any new or novel arguments in their reply brief. And even if the Court considered it to be a response brief, as Plaintiff insists, *see* Doc. 46, it was filed 26 days past the deadline for responses, and would be a fifth response—both reasons to disregard it.[12] Although pro se litigants are generally held to a less stringent standard, "a litigant's pro se status does not vitiate his obligation to comply with the Federal Rules of Civil Procedure." *Patterson*, 2001 WL 946181, at *1 (quoting *United States v. Ware*, 172 F.R.D. 458, 459 (D. Kan. 1997)). "Having chosen to file a civil action in the district court, [a pro se litigant] assumed the responsibility for complying with the rules of civil procedure." *Chester v. Green*, 120 F.3d 1091, 1091 (10th Cir.1997).

Although it is unclear whether a motion to strike is the proper vehicle for Defendants to challenge this brief, *see Skerce*, 2019 WL 8017822, at *2 ("First, the motion to strike is improper because only material included in a pleading may be the subject of a motion to strike and, thus, motions, briefs, memoranda, objections, or affidavits may not be attacked by a motion to strike"

---

[12] The Court notes that Plaintiff's filing habits in this case have been demanding. Since this case was removed on March 5, Plaintiff has filed at least seven motions, multiple other briefs or documents (including the responses detailed above), and has initiated an interlocutory appeal. Regarding the interlocutory appeal, the Court notes that although a proper appeal will often divest the district court of jurisdiction, a district court retains jurisdiction where an appeal is untimely or addresses a non-appealable order. *Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563, 567 (10th Cir. 1979) ("An attempt to appeal a non-final decision of a district court remains just that, an attempt. It is a nullity and does not divest the trial court of its jurisdiction."). Here, Plaintiff's appeal was of the Magistrate Judge's non-appealable discovery order. See Doc. 37. Under these circumstances, Plaintiff's interlocutory appeal does not divest this Court of jurisdiction because it is not a proper appeal. The Court has also reviewed the appeal docket and notes that the Tenth Circuit has entered an order questioning its jurisdiction to hear Plaintiff's appeal, and in response, Plaintiff has moved to dismiss the appeal.

(quoting *Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 994 (D.N.M. 2016)) (internal quotations and brackets omitted)), the Court agrees that it should not be considered.[13]

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion for Summary Judgment (Doc. 15) is GRANTED. Defendants Judge Steven Montgomery, Miami County Courthouse, Miami County Sheriff's Department, and KCAMP are DISMISSED WITHOUT PREJUDICE. Plaintiff's constitutional claims under the Fourth, Fifth, Ninth, and Fourteenth Amendments are likewise DISMISSED WITHOUT PREJUDICE.[14] Defendants Zaman and Richardson are entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

THE COURT FURTHER ORDERS that Plaintiff's state-law negligence claim is REMANDED to the District Court of Miami County, Kansas. The Court directs the Clerk of Court to take all necessary steps to effectuate this remand.

THE COURT FURTHER ORDERS that Defendant's Motion to Strike (Doc. 45) is GRANTED.

IT IS SO ORDERED.

Dated: June 18, 2020             /s/ *Holly L. Teeter*
                                 HOLLY L. TEETER
                                 UNITED STATES DISTRICT JUDGE

---

[13] In reaching this decision, the Court did review Plaintiff's surreply/fifth response. Even if the Court were to consider it, it would not change the outcome of this order.

[14] Although Defendants' motion is styled as a summary-judgment motion, the Court notes that as to certain parties and certain claims, Defendants seek dismissal. And as noted above, Plaintiff has conceded he is not asserting claims against certain parties or has not asserted a valid claim. Thus, dismissal is proper as to those parties and claims, as opposed to summary judgment.